UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

J. MICHAEL HAYES, ESQ.,

       Plaintiff,

v.                                                                          01-CV-0907E(Sr)

JOHN V. ELMORE, ESQ,[1] In His Capacity
  As Chairman Of The State Of New york
  Attorney Grievance Committee Of The
  Eighth Judicial District,

       Defendant.

_____

### DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment.  Dkt. #43.

Plaintiff's complaint, as limited by the decision of the Hon. John T. Elfvin granting defendants' motion for summary judgment in part (Dkt. #30), challenges New York's Disciplinary Rule ("DR"), 2-105(c)(1), which regulates an attorney's ability to communicate certification by a private organization as a specialist in a particular area of law or law practice, as unconstitutionally vague.  Dkt. #1.  A non-jury trial was conducted on October 15, 2008.  The parties agree that the issue to be resolved is whether DR 2-105(c)(1), is unconstitutionally vague.  Dkt. #48, p.6.

_____

[1] John V. Elmore, Esq. was substituted for Nelson F. Zakia, Esq. by stipulation of the parties.  Dkt. #48, p.6.

**FINDINGS OF FACT**

1.      Plaintiff, J. Michael Hayes, an attorney licensed to practice in the State of New York, was awarded Board Certification in Civil Trial Advocacy in 1995 by the National Board of Trial Advocacy ("NBTA"), an organization accredited by the American Bar Association.  Stipulated Facts, ¶ 1.

2.      There are only approximately 50 lawyers who have been certified by the NBTA and plaintiff believes he is the only such lawyer in New York State.  Dkt. #48, p.116.

3.      Plaintiff restricts his practice to plaintiffs' personal injury litigation.  Dkt. #48, p.8.

4.      The State of New York Attorney Grievance Committee for the Fourth Judicial Department ("Grievance Committee"), is empowered to investigate allegations of professional misconduct by attorneys practicing within its jurisdiction, including complaints of improper advertising.  Exh. 48, ¶¶ 2-4.

5.      Following an investigation by the Grievance Committee, complaints of professional misconduct may be resolved by dismissal, non-disciplinary Letters of Caution or formal discipline.  Exh. 48, ¶ 5.

6.      Although the Grievance Committee "shies away from giving advisory opinions" to avoid rendering opinions on incomplete facts and to conserve resources for its enforcement duties, during the course of its investigation of possible disciplinary

violations, the Grievance Committee attempts to work with the attorney to correct

violations and upon compliance with the disciplinary rule, routinely dismisses

investigations without further action.  Dkt. #48, pp.126, 130 & 133; Exh. 46, p.65 & Exh.

48, ¶ 6.


7.      Effective June 30, 1999, DR 2-105(c)(1) provided that:

> A lawyer who is certified as a specialist in a particular area
> of law or law practice by a private organization approved for
> that purpose by the American Bar Association may state the
> fact of certification if, in conjunction therewith, the certifying
> organization is identified and the following statement is
> prominently made: "The [name of the private certifying
> organization] is not affiliated with any governmental
> authority.  Certification is not a requirement for the practice
> of law in the State of New York and does not necessarily
> indicate greater competence than other attorneys
> experienced in this field of law."

Stipulated Facts, ¶ 4.


8.      Sharon Stern Gerstman was Chair of the Special Committee on Lawyer

Advertising and Lawyer Referral Service Regulation of the New York State Bar

Association ("Advertising Committee"), during the time period in which DR 2-105 was

amended to conform to the Supreme Court's decision in *Peel v. Attorney Disciplinary

Commission of Illinois*, 496 U.S. 91, 110 (1990).  Gerstman Declaration, ¶ ¶ 1 & 6.


9.      Ms. Gerstman explained that the Advertising Committee adopted the

"prominently made" requirement because they believed that phrase best conveyed the

notion that it would be improper to display the disclaimer in a manner that was too small

or too fast for an average viewer to receive the information in a meaningful fashion.

Gerstman Declaration, ¶ 23.

10.   The Advertising Committee surveyed other states with respect to their approach

to disclaimers, and discerned that the majority of states utilized similar phrases, *i.e.*,

prominently displayed, conspicuously placed, clear and conspicuous, clearly and

prominently labeled, rather than specifying a required type size or proportion.

Gerstman Declaration, ¶ 24.

11.   The Advertising Committee rejected requirements of specific font size or other

precise measurement because of the large number of different media the advertising

rules would encompass.  Gerstman Declaration, ¶ 25.

12.   In the second half of 1999, plaintiff contracted for two vinyls to be posted on a

revolving basis on various billboards around Buffalo.  Dkt. #48, p.24 & Exh. 32.

13.   The main text of the billboard is as follows:

INJURED . . . CONSULT A SPECIALIST

J. MICHAEL HAYES

852-2707

69 DELAWARE AVE ● BUFFALO, NY

with the disclaimer in smaller letters underneath.  Exh. 47.

14.     By letter dated November 17, 1999, the Grievance Committee questioned

whether the disclaimer on plaintiff's billboard advertisement on the Kensington

Expressway, which plaintiff recalled was in yellow lettering against a green background,

was prominently made.  Dkt. #48, p.27 & Exh. 10.


15.     This complaint, the first involving the visibility of the disclaimer on a billboard,

originated after Vincent L. Scarsella, Principal Counsel to the Grievance Committee,

experienced difficulty reading the disclaimer as he drove past the billboard on the

Kensington Expressway while traveling the speed limit of 55 miles per hour.  Dkt. #48,

p.137 & Exh. 46, pp.54 & 56.


16.     Plaintiff responded that after determining that the federal government requires

five inch letters for warnings on billboards advertising cigarettes, he attempted to satisfy

DR 2-105(c)(1) by directing the advertiser to use six inch letters.  Exh. 11.


17.     The Grievance Committee closed its investigation, but advised plaintiff that "it

remains our concern that the printing of the disclaimer may not, in fact, be sufficient in

size to be read by potential clients traveling along the expressway."  Exh. 12.  As a

result, the Grievance Committee encouraged plaintiff to reconsider the size of the

disclaimer and to contact the Committee on Professional Ethics of the New York State

Bar Association for an advisory opinion.  Exh. 12.

18.     By letter dated May 11, 2000, the Grievance Committee opined that the

disclaimer on plaintiff's billboard advertisement on Route 5 "cannot be read by passing

motorists and that, therefore, it is contrary to DR 2-105(c)(1)."  Exh. 14.

19.     In response, plaintiff advised the Grievance Committee that he had instructed

the advertiser to remove the billboard, which was exactly the same as the one

previously erected on the Kensington Expressway, by the end of the month and that he

was contracting for modified billboards "upon which the lettering is very large, in bold

black type and on a white background."  Exh. 15.

20.     By letter dated May 19, 2000, the Grievance Committee advised that in light of

plaintiff's representations, the investigation with respect to the billboard advertisement

would be closed, but that the Grievance Committee was commencing a new

investigation into plaintiff's letterhead, which omitted the disclaimer, stating only the

following:

J. MICHAEL HAYES*

[Names of two other attorneys omitted]

*Board Certified Civil Trial Advocate
National Board of Trial Advocacy

Exh. 15 & 16.

21.     In response, plaintiff advised the Grievance Committee that he believed the

disclaimer was not required because he did not include the word "specialist."  Exh. 17.

-7-

22.     The Grievance Committee opined that a claim of certification implies

specialization, thereby requiring  the disclaimer, and advised plaintiff that it would

request his appearance before the Grievance Committee with a recommendation that

formal disciplinary action be taken unless plaintiff modified his letterhead.  Exh. 23.

23.     Plaintiff testified that the language of the disclaimer was problematic because it

undermined the value of his certification by stating, in effect, "there are other lawyers

out [t]here that are just as good as me and this Board Certification is really not . . .

important."  Dkt. #48, p.82.

24.     Plaintiff commenced a declaratory judgment action in this Court on July 30,

2001.  01-CV-545 at Dkt. #1.

25.     By letter dated August 16, 2001, the Office of the Attorney General for the State

of New York, representing the defendants in the declaratory judgment action,

represented that the Grievance Committee would refrain from further disciplinary action

if plaintiff agreed to the following:

- Billboard advertisements utilize six inch letters for the disclaimer;
- An asterisk precedes the notation of certification on letterhead and both the asterisk and disclaimer, which can be reproduced elsewhere on the page, utilizes the same font size as the notation;
- An asterisk precedes the notation of certification on business cards and both the asterisk and the disclaimer, which can be reproduced on the back of the card, utilizes the same font size as the notation;

- Telephone book advertising notation of certification and disclaimer remains unchanged; and

- Television or radio advertising is submitted to the Grievance Committee for its review and opinion prior to broadcasting.

Exh. 31.

26.    Plaintiff testified that the disclaimer requirement effectively precludes radio advertising because it takes approximately 19 seconds to read the disclaimer, leaving less than 11 seconds for the actual advertisement in a 30 second spot and rendering 10 second spots impossible.  Dkt. #48, p.58.

27.    On September 19, 2001, at plaintiff's direction, Keith Kane, manager of the Buffalo Office for Viacom Outdoor, Inc., measured the disclaimer on plaintiff's billboards and determined that although plaintiff had directed that the letters be six inches high, they were actually four inches high.  Exh. 32.

28.    Plaintiff's federal court action was dismissed after the Hon. John T. Elfvin granted defendants' request that the Court abstain from the case due to the pending state disciplinary proceeding.  *Hayes v. New York Attorney Grievance Committee of the Eighth Judicial District*, No. 01-CV-545, 2001 WL 1388325 (W.D.N.Y. Nov. 1, 2001).

29.    By letter dated November 6, 2001, plaintiff advised the Grievance Committee that he would comply with DR 2-105(c)(1) as directed by the Grievance Committee and the Grievance Committee closed its file.  Exh. 33-34.

30.     Plaintiff commenced this action on December 14, 2001.  Dkt. #1.

31.     By letter dated February 28, 2002, the Grievance Committee opined that its review of video tape of plaintiff's proposed advertisement revealed that it was in compliance with DR 2-105(c)(1) and that plaintiff's current disclaimers on billboard and telephone directory advertisements also satisfied DR 2-105(c)(1).  Exh. 36.

### CONCLUSIONS OF LAW

1.     The Due Process Clause of the Fourteenth Amendment requires that "laws be crafted with sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and to 'provide explicit standards for those who apply them.'" *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007), *quoting Betancourt v. Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006), *quoting Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Thus, a law must afford individuals fair notice or warning when the state has prohibited specific behavior or acts and must not authorize or encourage arbitrary and discriminatory enforcement.  *Id.* at 65-66.

2.     "This second ground, which the Supreme Court recognizes as 'the more important aspect of the vagueness doctrine,' mandates that laws contain 'minimal guidelines to govern law enforcement.'" *Id.* at 66, *quoting Kolender v. Lawson*, 461 U.S. 352, 358 (1983).  "Indeed, statutes must 'provide explicit standards for those who apply' them to avoid 'resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" *Id., quoting Grayned*, 408 U.S. at 108-09.

3.      As a result, a court must first determine whether the statute gives a person of

ordinary intelligence a reasonable opportunity to know what is prohibited and then

consider whether the law provides explicit standards for those who apply it.  *United*

*States v. Madi*, 996 F.2d 548, 550 (2d Cir. 1993).

4.      "Regulations need not, however, achieve "meticulous specificity," which would

come at the cost of 'flexibility and reasonable breadth.'" *Betancourt*, 448 F.3d at 552,

*quoting Grayned*, 408 U.S. at 110.  "The degree of vagueness that the Constitution

tolerates – as well as the relative importance of fair notice and fair enforcement –

depends in part on the nature of the enactment." *Id., quoting Village of Hoffman*

*Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498 (1982).  For example,

"enactments with civil rather than criminal penalties" are afforded greater leeway

"because the consequences of imprecision are qualitatively less severe."  *Village of*

*Hoffman Estates*, 455 U.S. at 499.

5.      The Supreme Court has also suggested that "perhaps the most important factor

affecting the clarity that the Constitution demands of a law is whether it threatens to

inhibit the exercise of constitutionally protected rights."  *Id.*

6.      "It is now well established that lawyer advertising is commercial speech and, as

such, is accorded a measure of First Amendment protection."  *Florida Bar v. Went For*

*It, Inc.*, 515 U.S. 618, 623 (1995).  However, commercial speech enjoys a limited

measure of protection, commensurate with its subordinate position in the scale of First

Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression.  *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1995).  For example, states may impose appropriate restrictions upon potentially misleading statements contained within attorney advertisements, including requiring a disclaimer about a certifying organization such as the NBTA.  *Peel v. Attorney Disciplinary Commission of Illinois*, 496 U.S. 91, 110 (1990); *Hayes v. Zakia*, 327 F. Supp.2d 224, 228-30 (W.D.N.Y. 2004).

7.      In accordance with its plain meaning, "prominently made" signals that the disclaimer must be noticeable or conspicuous.

8.      The use of the phrase "prominently made" permits a single standard throughout the spectrum of advertising media and is applicable regardless of an advertisement's artistic vision.

9.      When balanced against the level of protection afforded the constitutional right protected, the phrase "prominently made" is sufficient to provide a person of ordinary intelligence to understand what the regulation requires.

10.     When balanced against the level of protection afforded the constitutional right protected, the phrase "prominently made" provides the Grievance Committee sufficiently explicit standards to guide its enforcement of the regulation.

11.     Plaintiff's argument that the Grievance Committee's investigation of both billboards demonstrates inconsistency in it's application of the "prominently made" standard is defeated by the fact that, unbeknownst to plaintiff, neither billboard contained six inch lettering as plaintiff had requested.

12.     Any confusion plaintiff may have had regarding the Grievance Committee's interpretation of "prominently made" with respect to plaintiff's many modes of advertising should have been resolved prior to the filing of this lawsuit when the Attorney General, by letter dated August 16, 2001, set forth the Grievance Committee's position with respect thereto.

13.     Plaintiff's argument that the number of words required by the disclaimer makes it impracticable for use in certain advertising media is an argument directed to the validity of the disclaimer requirement, which is not the issue currently before the Court.

14.     Plaintiff's argument that the content of the disclaimer eviscerates the value of proclaiming certification as a specialist is also directed to the validity of the disclaimer requirement, which is not the issue currently before the Court.

15.     Plaintiff's argument that the disclaimer does not apply unless the advertisement uses the word "specialist" is an argument directed to the scope of the disclaimer requirement, which is not the issue currently before the Court.

**CONCLUSION**

In accordance with the foregoing findings of fact and conclusions of law, set forth pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court finds that DR 2-105(c)(1) is not constitutionally vague. The Clerk of the Court is directed to enter judgment in favor of the defendant in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

DATED:      Buffalo, New York
            March 30, 2010

                                        s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**